## Case No. 4,518.

ERLANDSEN et al. v. The OCEAN SPRAY.

District Court, D. California. Sept. 29, 1868. [2]

H. & C. McAllister, for libellant.
J. B. Manchester, for claimant.

HOFFMAN, District Judge. On the morning of the 4th of March last, the schooners Lane and Ocean Spray were proceeding along the coast,—the Lane bound for Mendocino Harbor, and the Ocean Spray for Little River, a harbor, or, as it is not inappropriately called, a "hole" in the coast, about three miles further to the southward. The Lane was at this time considerably in advance of the Spray, probably not less than seven or eight miles. On approaching within about one-half a mile of Mendocino Harbor, the master of the Lane observed the flag on shore at half-mast, indicating that it would be dangerous to enter the harbor. He therefore squared away, and ran down the coast, intending to go into Little River. He had ac-

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

[2] [Affirmed by Circuit Court and in 12 Wall. (79 U. S.) 366.]

complished about two-thirds of the distance between the harbors, when he found that he was too far in shore to permit him to weather the end of the ledge of rocks which forms the northerly side of the entrance of Little harbor. He, therefore, jibed his mainsail, and stood off shore. In doing so his main sheet parted. He thereupon lowered his mainsail, hoisted his foresail, and stood off under his foresail until he could repair the damage. As soon as this was effected, he lowered his foresail, wore his vessel around, and stood directly in for the harbor, under mainsail and jib. All the witnesses agree that at this time he was distant from the shore about one mile and a half, or two miles, and directly off the entrance to the harbor. It is also stated by all the witnesses that the Spray was going three or four times as fast as the Lane when the latter was standing in for the harbor. As the vessels at these different rates of speed reached a common point of collision, which was distant a mile and a half from the Lane when she wore round and headed for the harbor, it is evident that at the time the Spray must have been three or four times further off from it than the Lane, or distant from it five or six miles. When the master of the Spray observed that the Lane had lowered her mainsail and was standing off shore, he, as he says, "jumped to the conclusion" that she was not going into the harbor. He thereupon put additional sail on his vessel, and, being to the northward and westward, came down before the wind at a high rate of speed. He continued his course without any reference to the Lane's movements, and, while in the act of passing close to, or as some of the witnesses assert pass outermost of the rocks which formed the ledge, came in contact with the Lane, striking her about amidships with his stern. The two vessels swung together and were carried into the harbor, where the Lane soon after was stranded on its southerly shore.

On the part of the respondents it is urged that the action of the Lane in standing off shore and lowering her mainsail indicated to the master of the Spray that she was not going in, and gave him the right to treat her as having abandoned the right to do so, which being in advance she would otherwise have had. It is true that the conclusion at which the master of the Spray arrived was natural and justified by the appearances. But his mistake must have been apparent to him the moment the Lane wore round and stood in for the harbor. During the whole time that the Lane was accomplishing the mile and a half which she performed before reaching the point of collision, her intention to go in must have been manifest, and the master of the Spray had no right to attempt to cut her off and get into the harbor ahead of her, if by so doing he exposed himself to the danger of a collision. The account of the occurrence given by Captain Tommeledge, a witness for the claimant, is conclusive as to the merits of the case. He states that when he saw the Lane standing off shore, he thought she was not going in; but when he saw her set her mainsail, "he knew she was going in." This, he says, occurred about half an hour before the collision. The Lane was then about two miles from the point of rocks,—the Spray four or five miles off. He adds: "If I had been coming in as the Spray was, I should have done my best to get in first and get my load first. If I had missed it and cut him down, I should have had to stand the consequences. The Lane was ahead, and had the first right to go in." I entirely assent to the correctness of the views of this witness, and think there is no room for doubt that the collision was caused by an attempt on the part of the Spray to cross the track and get ahead of the Lane when the latter was too far in advance to allow her to do so. There is so little conflict of testimony as to the principal facts in the case that I do not deem it necessary to consider the evidence relative to the subsequent admission of the master of the Spray, or the testimony of persons on shore, whose attention was attracted to the "race" between the vessels.

It is suggested in the brief submitted by the advocate for the claimants that the immediate cause of the collision was the force of a breaker, which threw the Spray against the Lane, and the testimony of some of the witnesses is referred to, to the effect that a vessel in the breakers near the point of rocks is to a great extent unmanageable. But this, if it be true, is no excuse to the Spray. She had no right, in attempting to cut off the Lane, to run into breakers which rendered her unmanageable. During the whole time that the Lane was standing in (half an hour, according to the claimant's own witness), the intention to go in was unmistakable, and the Spray should have given way and yielded the precedence to her before she had placed herself in a position to render the effort to avoid her impracticable, or even of doubtful result. I think it very plain that the accident must be attributed solely to the fault of the Spray.

An order of reference to the commissioners, to ascertain and report the damages, must be entered.